FILED

Mar 31 2025, 9:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court





# IN THE
# Court of Appeals of Indiana

Cara Williams,

*Appellant-Petitioner*

v.

Travis Williams,

*Appellee-Respondent*

---

March 31, 2025

Court of Appeals Case No.
24A-DC-2068

Appeal from the Howard Superior Court

The Honorable Stephen R. Kitts, Special Judge

Trial Court Cause No.
34D01-2210-DC-2398

---

**Opinion by Judge Vaidik**
Judges Bailey and DeBoer concur.

**Vaidik, Judge.**

# Case Summary

Cara Williams ("Wife") appeals the trial court's child-support order and property division in the dissolution of her marriage to Travis Williams ("Husband"). We reverse the child-support order and remand for further proceedings. As to the property division, Wife argues that the trial court erred by not enforcing a postnuptial agreement between the parties. But the trial court based that decision on Wife's own proposed findings and conclusions. Specifically, the court noted that Wife's proposed order asked the court to find that Husband didn't "knowingly, intentionally, and voluntarily" execute the postnuptial agreement. On appeal, Wife doesn't take issue with the trial court's characterization of her proposed order, such as by claiming that the court misread it or that it contained a typo. In fact, despite the trial court's express reliance on it, Wife's briefs don't mention her proposed order at all. Nor did she include her proposed order in her appellate appendix, and it is not otherwise included in the record on appeal. As the appellant, Wife had the burden of showing error. Because she makes no argument that the trial court's finding was wrong and hasn't made her proposed order available to us, she didn't carry that burden, and we affirm the trial court's property division. In doing so, however, we also urge trial courts and litigants to ensure that proposed orders are submitted in a way that makes them part of the court record.

# Facts and Procedural History

[2] Wife and Husband married in 2016 and later had two children. In 2019, the family moved into a house that Wife bought with her mother ("the Marital Home"). Wife and Husband signed a postnuptial agreement in which Husband agreed not to make any claim to the Marital Home if the parties ever divorced.

[3] Wife petitioned for dissolution in October 2022. Husband moved to invalidate the postnuptial agreement, claiming that he signed it involuntarily and under duress, coercion, or undue influence and that the agreement is unconscionable.

[4] The final hearing was held in June 2024. Wife asked the court to enforce the postnuptial agreement and award her the interest in the Marital Home without including it in the marital estate. The parties also disagreed about the amount of child support Husband was to pay Wife. Husband didn't want any overtime pay included in his income calculation. He testified that he had been working in a new job for about two months and had worked significant overtime, but he said he did so because he was "in a hole" and trying to "dig out" and that overtime wasn't guaranteed going forward. Tr. pp. 195-96. Husband also wanted parenting-time credit for overnights with the children. Although he wasn't having any overnights at that time because of a protective order, the parties had agreed to a plan under which he would start having regular overnights within four months. On the other hand, Wife asked for a credit for work-related child-care expenses, as she was working about sixteen hours a

week and sending the parties' youngest child to preschool five days a week at a cost of $190 a month.

[5]     After the parties submitted proposed orders, the trial court issued its decree of dissolution. On the issue of child support, the court adopted Husband's worksheet and ordered him to pay $164 per week. As relevant to this appeal, Husband's worksheet showed that he had a weekly gross income that didn't include any overtime pay, that he is entitled to parenting-time credit for overnights, and that Wife doesn't have any work-related child-care expenses. Appellee's App. Vol. II p. 60. As for the Marital Home, the court noted that Wife's proposed order indicated a change in her position on the postnuptial agreement:

> With respect to [the Marital Home], the Court references [Wife's] proposed Findings of Fact and Conclusions of Law (which the Court has *not* adopted in its entirety...) There was, at Hearing, a question about the enforcement of [the] postnuptial agreement with respect to said property. [*Wife*'s] proposal is that the Court finds that [Husband] did *not* knowingly, intentionally, and voluntarily execute this agreement. Given the testimony, the Court finds this exceedingly generous but nonetheless therefore adopts it. Half of the value, and half of the liability, is included in the marital pot, with the parties' interest and equity assigned to [Wife].

Appellant's App. Vol. II p. 28 (italics in original). Having included half of the equity of the marital home in the marital estate and awarded it to Wife

(approximately $122,000, with the other half still belonging to Wife's mother), the court ordered Wife to pay Husband an equalization payment of $68,211.[1]

[6] Wife now appeals.

## Discussion and Decision

### I. The trial court erred in determining child support

[7] Wife contends the trial court erred in determining Husband's child-support obligation. We will set aside a trial court's child-support determination only if it is clearly erroneous. *In re Paternity of W.M.T.*, 180 N.E.3d 290, 302 (Ind. Ct. App. 2021), *trans. denied*. We consider only the facts and inferences favorable to the trial court's decision and won't reweigh the evidence or assess the credibility of the witnesses. *Id.*

[8] Wife contends that the trial court erred in three respects: (1) not including overtime pay in Husband's income; (2) not giving Wife a credit for work-related child-care expenses; and (3) giving Husband a credit for overnights with the children. As to Husband's income and his overnights with the children, we find

---

[1] The trial court's decree also included the following passage about Husband's PERF account: "[Wife] waives her claim for her share of [Husband's] PERF account and shall sign all documents executing said waiver." Appellant's App. Vol. II p. 29. Wife reads this to mean that the court excluded Husband's PERF account from the marital estate, and she argues this was error. But the court's statement was simply a reference to Wife's marital balance sheet, in which she proposed that the entire account be awarded to Husband. *See* Ex. 29. Wife cites nothing in the record suggesting that Husband even asked the court to exclude his PERF account from the marital estate. To the contrary, Husband's marital balance sheet, like Wife's, included the account as a marital asset and proposed that it be awarded to him. *See* Ex. A. We see no indication that the trial court did anything to the contrary.

no error. While Husband earned some overtime pay in the months before the final hearing, he testified he was trying to dig himself out of a financial hole and that he wasn't guaranteed any overtime going forward. And while Husband wasn't having overnights with the children at the time of the final hearing, he was to start within a few months.

[9] The trial court did err, however, by not giving Wife a credit for work-related child-care expenses. It is undisputed that, at the time of the final hearing, Wife was working and incurring child-care expenses. Husband argues that Wife shouldn't get a credit because she was sending the parties' youngest child to preschool five days a week even though she was working only about sixteen hours a week. While those facts are relevant to the **amount** of the credit Wife receives, they do not mean she gets no credit at all. We therefore reverse the child-support order and remand to the trial court with instructions to determine the appropriate credit for Wife's work-related child-care expenses.

## II. Wife hasn't shown any error in the trial court's division of the marital property

[10] Wife also contends that the trial court should have enforced the postnuptial agreement and awarded her the interest in the Marital Home without including it in the marital estate. But she doesn't address, or even acknowledge, the trial court's stated reason for disregarding the agreement—Wife's proposed order asked the court to find that Husband did not "knowingly, intentionally, and voluntarily" execute it. Wife doesn't claim that the trial court misread her proposed order or that it contained a typographical error. In fact, she doesn't

mention her proposed order at all, despite the trial court's clear and direct reliance on it. Nor is Wife's proposed order included in the record on appeal or in her appellate appendix, so we can't review it ourselves. Based on the record and arguments before us, we are left to assume that the trial court's characterization of Wife's proposed order is correct. And because Wife asked the trial court to find the postnuptial agreement invalid, she cannot now be heard to argue that the trial court erred by doing so. Wife hasn't shown any error in the trial court's division of the marital property.

[11] Because Wife doesn't dispute the trial court's characterization of her proposed order, its absence from the record doesn't impact our resolution of this appeal. Unfortunately, though, it is common for parties to submit proposed orders in a way that doesn't create an official record (e.g., by emailing them directly to judges' chambers). In many appeals, it is helpful, and sometimes critical, to know what the parties said in their proposed orders. Therefore, trial courts and litigants should ensure that proposed orders are submitted in a way that results in them being included in the trial-court file and the potential appellate record.

[12] Affirmed in part, reversed in part, and remanded.

Bailey, J., and DeBoer, J., concur.

ATTORNEY FOR APPELLANT

Angela B. Swenson
Swenson & Associates PC
Carmel, Indiana

ATTORNEY FOR APPELLEE

Mark K. Leeman
Leeman Law Offices
Logansport, Indiana